UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| DIAMOND X RANCH, LLC,<br><br>                          Plaintiff,<br>     v.<br>ATLANTIC RICHFIELD COMPANY,<br><br>                         Defendant. | Case No. 3:13-cv-00570-MMD-WGC<br><br>ORDER<br><br>(Motion to Dismiss the Fifth, Sixth, Seventh, and Eighth Claims – dkt. no. 27) |

**I.   SUMMARY**

Before the Court is Defendant Atlantic Richfield Company's Motion to Dismiss the Fifth, Sixth, Seventh, and Eighth Claims (dkt. no. 27) ("the Motion"). The Court has also reviewed Plaintiff Diamond X Ranch, LLC's opposition (dkt. no. 31), and Defendant's reply (dkt. no. 43). For the reasons discussed below, the Motion is granted in part.

**II.   BACKGROUND**

Plaintiff owns approximately 1700 acres of land in Douglas County, Nevada, and Alpine County, California ("the Property"). (Dkt. no. 1 ¶ 31.) Plaintiff alleges that the Property has been contaminated and rendered unusable by acid mine drainage ("AMD") flowing from the Leviathan Mine in Alpine County, California ("the Mine"). (*Id.* ¶¶ 13, 15, 32-34.) Between 1953 and 1962, Anaconda, Defendant's wholly owned subsidiary, owned and operated the Mine as an open-pit sulfur mine. (*Id.* ¶ 14.) No entity has operated the Mine since 1962. (*Id.* ¶ 14.)

In 1997, the United States Environmental Protection Agency ("EPA") began to take action at the Mine under the Comprehensive Environmental Response,


Compensation, and Liability Act ("CERCLA"). (*Id.* ¶¶ 19-20.) EPA listed the Mine on the National Priorities List in 2000, and identified Defendant and the State of California as potentially responsible parties. (*Id.* ¶ 22.) In that role, EPA has required Defendant to carry out remedial actions, including performing a Remedial Investigation/Feasibility Study ("RI/FS") regarding certain discharges from the Mine. (*See* dkt. no. 28-2 ¶¶ 24, 50; dkt. no. 28-3 at 32-47.) Despite these and other removal efforts, AMD continues to affect the watershed surrounding the mine. (Dkt. no. 1 ¶¶ 28-30.) In this action, Plaintiff brings ten (10) claims to remedy contamination on the Property caused by AMD; Defendant moves to dismiss four (4) claims involving water pollution and diversion.

Claims 5 and 6 involve alleged violations of the Clean Water Act ("CWA"), 33 U.S.C. § 1311. (*Id.* ¶¶ 67-83.) In Claim 5, Plaintiff alleges that Defendant has discharged pollutants into the Leviathan, Aspen, and Bryant Creeks in violation of the CWA for "at least 41 years, commencing in 1972 and continuing to the present."[1] (*Id.* ¶¶ 75-76.) Plaintiff alleges that the discharges originate, in part, from five (5) evaporation ponds constructed by the Lahontan Regional Water Quality Control Board as part of a Pollution Abatement Project that the California Water Resources Control Board approved in 1983, before EPA became involved in 1997. (*See id.* ¶¶ 16-18, 74.) Plaintiff also identifies six (6) other sources of discharge, including the Adit Drain, the Pit Underdrain, the Channel Underdrain, the Delta Seep, the Aspen Seep, and "known and unknown cracks and fissures." (*Id.* ¶¶ 24-27.) Discharges from these sources flow through a series of direct discharges, seeps, and groundwater before reaching creeks that lead to the Property. (*Id.* ¶ 28.) Citing the same sources of discharges, Plaintiff alternatively alleges in Claim 6 that if Defendant has permits for the Mine, then Defendant necessarily violates the terms of those permits by emitting AMD. (*Id.* ¶¶ 81-82.)

Claims 7 and 8 involve state and common law allegations. In Claim 7, Plaintiff alleges that Defendant violates Nevada's Water Pollution Control Act ("NWPCA"), NRS

---

[1] Plaintiff cites the year the CWA was enacted as the start of Defendant's violations. (*See* dkt. no. 28-6 at 3.)

§ 445A.465, by discharging pollutants into Bryant Creek, a navigable water in Nevada. (*Id.* ¶¶ 84-93.) Plaintiff alleges that the same discharges noted in its CWA claims give rise to its NWPCA claim. (*See id.* ¶¶ 74, 88.) Finally, in Claim 8, Plaintiff alleges that the evaporation ponds wrongfully divert water to which Plaintiff has a decreed right. (*Id.* ¶¶ 94-99.)

Among other remedies, Plaintiff seeks a declaratory judgment that Defendant is in violation of the CWA, injunctive relief to stop Defendant's discharge of pollutants and to remedy Defendant's wrongful diversion of water, civil penalties for Defendant's violations of the CWA and the NWPCA, and damages for the loss and impairment of Plaintiff's water rights. (*Id.* at 19.)

Defendant contends that the Court lacks subject matter jurisdiction for Claims 5, 6, 7, and 8 under CERCLA section 113(h), 42 U.S.C. § 9613(h) ("Section 113(h)").[2] Defendant also argues that no jurisdiction exists for Claim 8 because Plaintiff must first seek adjudication from a federally appointed Water Master. The Court finds that it lacks subject matter jurisdiction for Claims 5, 6, and 7, and for the injunctive relief sought in Claim 8. Because it is unclear from the record whether Plaintiff's claim for damages in Claim 8 must be presented to the Water Master, the Court will set oral argument and issue a separate Order on this claim only.

### III.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) allows defendants to seek dismissal of a claim or action for a lack of subject matter jurisdiction. Dismissal under Rule 12(b)(1) is appropriate if the complaint, considered in its entirety, fails to allege facts on its face that are sufficient to establish subject matter jurisdiction. *In re Dynamic Random Access*

---

[2] Defendant's other three bases for dismissal are: (1) venue is improper for claims 5 and 6 because the alleged discharges occurred in California, not Nevada; (2) Plaintiff failed to state a claim for claims 5, 6, and 7 because CERCLA preempts waste removals from complying with federal and state water permitting schemes; and (3) Plaintiff must join California as a defendant under Rule 19, but cannot do so because of the state's sovereign immunity. The Court focuses on Defendant's jurisdictional arguments, which the Court finds dispositive for each claim, except for the damages remedy in Claim 8.

3

1  *Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 984-85 (9th Cir. 2008). Although the
2  defendant is the moving party in a Rule 12(b)(1) motion to dismiss, the plaintiff is the
3  party invoking the court's jurisdiction. As a result, the plaintiff bears the burden of proving
4  that the case is properly in federal court. *In re Ford Motor Co./Citibank*, 264 F.3d 952,
5  957 (9th Cir. 2001) (*citing McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189
6  (1936)).

7  Defendant factually attacks the Complaint.[3] Under Rule 12(b)(1), "attacks on
8  jurisdiction can be either facial, confining the inquiry to allegations in the complaint, or
9  factual, permitting the court to look beyond the complaint." *Savage v. Glendale Union*
10 *High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). "In a facial attack, the challenger
11 asserts that the allegations contained in a complaint are insufficient on their face to
12 invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the
13 truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."
14 *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "Once a moving
15 party has converted the motion to dismiss into a factual motion by presenting affidavits
16 or other evidence properly brought before the court, the party opposing the motion must
17 furnish affidavits or other evidence necessary to satisfy its burden of establishing subject
18 matter jurisdiction." *Savage*, 343 F.3d at 1039 n.2 (*citing St. Clair v. City of Chico*, 880
19 F.2d 199, 201 (9th Cir. 1989)); *see also Trentacosta v. Frontier Pac. Aircraft Indus., Inc.*,
20 813 F.2d 1553, 1559 (9th Cir. 1987) (stating that on a factually attacked 12(b)(1) motion
21 to dismiss, the nonmoving party's burden is that of Rule 56(e)).

22 A court, however, may not render a jurisdictional finding of genuinely disputed
23 facts if the jurisdictional and substantive issues "'are so intertwined that the question of
24 jurisdiction is dependent on the resolution of factual issues going to the merits of an
25 action.'" *Safe Air for Everyone*, 373 F.3d at 1039 (quoting *Sun Valley Gasoline, Inc. v.*

---

[3]For its Rule 12(b)(1) arguments, Defendant assumes that Plaintiff alleges a sufficient factual basis for subject matter jurisdiction under the CWA, NWCPA, and Plaintiff's wrongful diversion claims. (Dkt. no. 43 at 3.)

4

*Ernst Enters., Inc.*, 711 F.2d 138, 139 (9th Cir. 1983)). Such intertwining occurs where "'a statute provides the basis for both the subject matter jurisdiction of the federal court and the plaintiff's substantive claim for relief.'" *Id.* at 1039-40 (*quoting Sun Valley, Inc.*, 711 F.2d at 139).

## IV.  DISCUSSION

CERCLA Section 113(h) strips federal courts of jurisdiction to review, under state or federal law, "any challenges to removal or remedial action selected under [42 U.S.C. § 9604], or to review any order issued under [42 U.S.C. § 9606(a)]," with several narrow exceptions. 42 U.S.C. § 9613(h). Those exceptions cover actions for response costs, damages, or contribution under 42 U.S.C. § 9607; certain actions brought under CERCLA's citizen suit provision, 42 U.S.C. § 9659; actions to enforce orders or seek reimbursement under 42 U.S.C. § 9606; and actions under 42 U.S.C. § 9606 where the United States moves to compel remedial action.[4] *See* 42 U.S.C. § 9613(h)(1)-(5). Section 113(h) "ensure[s] that the cleanup of contaminated sites will not be slowed or halted by litigation," *Razore v. Tulalip Tribes of Wash.*, 66 F.3d 236, 239 (9th Cir. 1995); it "amounts to a 'blunt withdrawal of federal jurisdiction.'" *McClellan Ecological Seepage Situation v. Perry* (*McClellan*), 47 F.3d 325, 328 (9th Cir. 1995) (*quoting N. Shore Gas Co. v. E.P.A.*, 930 F.2d 1239, 1244 (7th Cir. 1991)).

"An action constitutes a challenge to a CERCLA cleanup 'if it is related to the goals of the cleanup.'" *ARCO Envtl. Remediation, L.L.C. v. Dep't of Health & Envtl. Quality of Mont.*, 213 F.3d 1108, 1115 (9th Cir. 2000) (*quoting Razore*, 66 F.3d at 239). These actions may "interfere with the remedial actions selected under CERCLA Section 104," or "seek[] to improve on [a] CERCLA cleanup." *McClellan*, 47 F.3d at 330. Challenges to CERCLA cleanups include actions "where the plaintiff seeks to dictate specific remedial actions; to postpone the cleanup; to impose additional reporting requirements on the cleanup; or to terminate the RI/FS and alter the method and order

---

[4] Plaintiff does not contend that Claims 5, 6, 7, or 8 fall into any of these exceptions.

5

of cleanup." *ARCO Envtl. Remediation, L.L.C.*, 213 F.3d at 1115 (citations omitted). In the context of the CWA, the Ninth Circuit has held that actions targeting discharges from ongoing cleanups constitute challenges under Section 113(h). *McClellan*, 47 F.3d at 330-31. Moreover, where a court cannot "fashion any remedy [pursuant to the CWA] that would not interfere" with an ongoing cleanup, Section 113(h) controls. *Id.* at 331.

Plaintiff contends that Section 113(h) does not bar this Court from reviewing Claims 5, 6, 7, and 8 for two reasons. First, Plaintiff argues that the jurisdictional and substantive bases for these claims are intertwined, such that only a trier of fact may resolve disputed factual issues after a review on the merits, or a trial. (Dkt. no. 31 at 12-13.) Second, Plaintiff contends that Section 113(h) does not foreclose subject matter jurisdiction for Claims 5, 6, 7, and 8 because they do not challenge any CERCLA remedial or removal actions at the Mine. (*Id.* at 8-12.) These arguments fall short.

### A.   Jurisdictional and Substantive Bases for Relief

Plaintiff contends that the CWA provides the substantive and jurisdictional bases for these Claims 5, 6, 7, and 8. To support this proposition, Plaintiff cites *Augustine v. United States*, where the Ninth Circuit held that the timeliness of a claim under the Federal Tort Claims Act — a jurisdictional question — was intertwined with the merits of the plaintiff's medical malpractice claim, which turned on the timing of a diagnosis. 704 F.2d 1074, 1077-79 (9th Cir. 1983).[5] Whereas the plaintiff in *Augustine* filed his substantive claim under the same federal statute defining the court's jurisdiction, here, Defendant's jurisdictional challenge is premised on CERCLA, not the CWA, the NWPCA,

---

[5]Plaintiff also cites *Timberlane Lumber Co. v. Bank of America*, which supports the Court's conclusion that the jurisdictional and substantive bases are not intertwined. 749 F.2d 1378 (9th Cir. 1984) *overruled on other grounds by Hartford Fire Ins. Co. v. California*, 509 U.S. 764 (1993). There, the Ninth Circuit reviewed an antitrust action that had been dismissed for a lack of subject matter jurisdiction. *Id.* at 1379-80. The *Timberlane* court concluded that Rule 12(b)(1) — rather than Rule 56 — should govern its dismissal inquiry because the district court's dismissal "involve[d] a policy judgment that require[d] consideration only of the facts as alleged," and did not necessitate reaching the merits of the antitrust claims at issue. *Id.* at 1382. Plaintiff also cites *Thornhill Publishing Co. v. General Telephone & Electronics Corp.*, which discusses the jurisdictional and substantive questions presented by the Sherman Act. 594 F.2d 730, 733-35 (9th Cir. 1979). These cases do not dictate a different ruling on this issue.

6

or common law.[6] (Dkt. no. 27 at 9-10.) The CERCLA jurisdictional provision queries whether Claims 5, 6, 7, and 8 challenge the ongoing cleanup at the Mine, see 42 U.S.C. § 9613(h), which the Court may determine without reaching these claims' merits. Because the Court need not decide the merits of Claims 5, 6, 7, or 8 to determine whether subject matter jurisdiction exists, the jurisdictional and substantive bases for relief are not intertwined. The Court may therefore render a jurisdictional finding.

### B.     Challenges to CERCLA Cleanup at the Mine

Plaintiff next contends that Section 113(f) does not bar the injunctive relief or the civil penalties it seeks.[7] The Court finds that Plaintiff has not met its burden of showing that subject matter jurisdiction exists, except for its damages claim under Claim 8.

#### 1.     Injunctive Relief

Plaintiff seeks to "[p]ermanently enjoin Defendant from discharging pollutants from the Leviathan Mine site into any of Leviathan, Aspen, and Bryant Creeks, or their upgradient tributaries." (Dkt. no. 1 at 19.) Plaintiff additionally requests that the Court "[e]njoin Defendant from continuing to wrongfully divert water." (*Id.*) For Claims 5, 7 and 8, Plaintiff alleges that Defendant will continue either violating the CWA and the NCWPA, or wrongfully diverting water, until the Court issues an injunction. (*Id.* ¶¶ 78, 92, 98.) These requests for injunctive relief challenge the ongoing CERCLA cleanup at the Mine.

In *McClellan*, the Ninth Circuit held that Section 113(h) foreclosed review of a challenge under the CWA and other state and federal statutes to hazardous waste "treatment, storage and disposal" at an Air Force base undergoing a CERCLA cleanup. 47 F.3d at 327, 331. The court examined "the progress and scope of CERCLA activities" at the base, finding that certain sites fell within the scope of a Management Action Plan

---

[6] Indeed, Defendant has conceded that in the absence of CERCLA's jurisdictional bar, Plaintiff has stated sufficient facts for subject matter jurisdiction for its CWA, NWPCA, and wrongful diversion claims. (Dkt. no. 43 at 3.)

[7] Defendant notes that it does not challenge any damages claims under Rule 12(b)(1) or Section 113(h) with regard to Claim 8. (Dkt. no. 43 at 6 n.2.) Defendant further clarifies that if the Court does not dismiss Claim 8 for lack of jurisdiction, Plaintiff's damages claim may be viable. (*Id.* at 2 n.1.)

7

that governed the CERCLA cleanup. *Id.* at 328. Because the plaintiff's actions sought to compel those sites to comply with permitting and reporting requirements under the CWA, state water statutes, and other federal laws, the Court reasoned that they interfered with the base's ongoing CERCLA cleanup. *Id.* at 329-31. Accordingly, the court concluded that Section 113(f) barred the plaintiff's actions. *Id.* at 331.

Here, just as in *McClellan*, Plaintiff seeks injunctive relief to compel compliance with the CWA and the NWPCA. (*See* dkt. no. 1 ¶¶ 78, 92.) The sources that allegedly require discharge permits under these laws — specifically, the evaporation ponds, the Adit Drain, the Pit Underdrain, the Channel Underdrain, the Delta Seep, the Aspen Seep, and other known and unknown cracks and fissures (*id.* ¶¶ 24-27) — are covered by the ongoing CERCLA cleanup at the Mine. (*See, e.g.*, dkt. no. 28-1 ¶ 37 (requiring California to treat, maintain, and monitor site, including ponds, the Adit Drain, and the Pit Underdrain); dkt. no. 28-2 ¶ 50 (requiring Defendant to operate, maintain, or study various discharges); dkt. no. 28-3 at 33-35 (describing hydrogeology study, including of seeps and other groundwater flow, that Defendant will carry out as part of its RI/FS).) Furthermore, it is not clear that injunctive relief could be fashioned to avoid challenging the ongoing cleanup. Plaintiff's own allegations concede that these discharges would necessarily violate any CWA permit issued, indicating that compliance would interfere with the cleanup. (*See* dkt. no. 1 ¶¶ 80-83). Thus, contrary to *McClellan*, where certain sites on the Air Force base were clearly outside the scope of the CERCLA cleanup, Plaintiff's CWA and NWPCA claims only target sources of AMD releases that are covered by the ongoing cleanup. *See McClellan*, 7 F.3d at 331.

Similarly, Plaintiff's request for an injunction regarding Defendant's alleged wrongful diversion into the evaporation ponds challenges the ongoing CERCLA cleanup. EPA has ordered Defendant and California to carry out actions that require such diversion. California, for example, must treat and maintain water captured in the ponds, while Defendant must capture flows from the Channel Underdrain. (*See* dkt. no. 28-1 ¶ 37.i-ii; dkt. no. 28-2 ¶ 50.i.iii.) At minimum, the diversions and discharges for which

1  Plaintiff seeks injunctive relief are related to the goals of the ongoing cleanup. *See*
2  *Razore*, 66 F.3d at 239-40 (holding that Section 113(h) barred CWA claims that would
3  affect RI/FS process). Plaintiff has not met its burden to show that the Court has subject
4  matter jurisdiction over the injunctive relief it seeks in Claims 5, 7, and 8.[8] Thus, Section
5  113(f) strips this Court of jurisdiction to review Plaintiff's claims for injunctive relief.

### 2. Civil Penalties

Despite Section 113(h)'s broad reach, it does not cover all claims involving a CERCLA cleanup. The Ninth Circuit has clarified that "every action that increases the cost of cleanup or diverts resources or personnel away from it does not thereby become a 'challenge' to the cleanup." *McClellan*, 47 F.3d at 330 (offering, as an example, an action seeking to enforce minimum wage requirements). In *Pakootas*, however, the Ninth Circuit held that Section 113(h) barred a citizen suit for more than $24 million of civil penalties for past CERCLA violations. 646 F.3d at 1220-23. The court reasoned that the civil penalties would interfere with EPA's ability to enforce a settlement agreement it had executed with a polluter under CERCLA. *Id.* at 1217-18, 1221. The court further noted that "a suit for past penalties always has the potential to interfere with ongoing cleanup efforts, because of its potential effect on the responsible party's financial ability to perform the cleanup." *Pakootas*, 646 F.3d at 1222.

Here, under the CWA alone, Plaintiff seeks civil penalties of up to $37,500 per day for violations allegedly occurring since 1972. (*See* dkt. no. 1 ¶¶ 76, 79.) Assuming Plaintiff is correct that Defendant has violated the CWA "for at least 41 years," Plaintiff seeks up to approximately $560 million[9] in civil penalties. (*See id.*) Plaintiff seeks additional penalties of up to $25,000 per day under the NWPCA. (*Id.* ¶¶ 84-93.) While the cleanup costs associated with the Mine may far outweigh the civil penalties sought,

---

[8]Plaintiff does not appear to seek injunctive relief in Claim 6. (*See* dkt. no. 1 ¶¶ 80-83.) To the extent that Plaintiff does seek injunctive relief, the Court lacks subject matter jurisdiction over that claim.

[9]This figure is the product of civil penalties of $37,500 per day for 365 days each year over 41 years.

9

this figure has the potential to interfere with the ongoing cleanup because it could affect Defendant's ability and willingness to perform the necessary cleanup. *See Pakootas*, 646 F.3d at 1222. Moreover, given Plaintiff's concession that with permits, these discharges would nevertheless violate the CWA, Defendant would likely face higher penalties even if it attempted to comply with the CWA's permitting scheme. (*See* Dkt. no. 1 ¶¶ 80-83.) The Court therefore finds that Plaintiff fails to meet its burden of showing that these civil penalties would not interfere with the ongoing CERCLA cleanup, such that subject matter jurisdiction would exist. Rather, Section 113(h) forecloses subject matter jurisdiction over the civil penalties sought in Claims 5, 6, and 7.

### 3. Damages for Wrongful Diversion

Because Section 113(h) does not necessarily foreclose subject matter jurisdiction for damages sought under a wrongful diversion theory, *Beck v. Atl. Richfield Co.*, 62 F.3d 1240, 1243 (9th Cir. 1995), Defendant argues that the Court lacks subject matter jurisdiction pursuant to the Alpine Decree, which governs Plaintiff's water rights. (*See* dkt. no. 28-4, *United States v. Alpine Land & Reservoir Co.*, No. D-183 BRT (D. Nev. Oct. 28, 1980).) Defendant contends that the Alpine Decree requires the parties to seek adjudication from a federally appointed Water Master because the Decree states that "[a]ll disputes on the Carson River system involving the existence or ownership of water rights [or] the distribution of water . . . shall first be submitted to the Water Master for determination as a jurisdictional prerequisite to any complaint to the Court for relief." (*Id.* at 166.)

Based on the record submitted, it is not clear whether, pursuant to the Alpine Decree, Plaintiff must submit its damages claim in Claim 8 to the Water Master. Therefore, the Court will set oral argument for this claim only, and the Court will address in a separate Order whether submission to the Water Master is a jurisdictional prerequisite for Plaintiff's damages claim in Claim 8.

///

///

## V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion or reconsideration as they do not affect the outcome of the Motion.

It is hereby ordered that Defendant's Motion to Dismiss the Fifth, Sixth, Seventh, and Eighth Claims (dkt. no. 27) is granted with regard to Plaintiff's claims for civil penalties and declaratory and injunctive relief in Claims 5, 6, 7, and 8.

With regard to Plaintiff's monetary damages claim in Claim 8, the Court will set oral argument and issue a separate Order.

DATED THIS 30th day of September 2014.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE