UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| DIAMOND X RANCH, LLC,<br><br>  Plaintiff,<br>v.<br>ATLANTIC RICHFIELD COMPANY,<br><br>  Defendant. | Case No. 3:13-cv-00570-MMD-WGC<br><br>ORDER<br><br>(Pl.'s Motion for Reconsideration – dkt. no. 76; Def.'s Motion to Dismiss or to Strike – dkt. no. 87; Pl.'s Motion to Amend – dkt. no. 97) |

**I.  SUMMARY**

Before the Court is Plaintiff Diamond X Ranch, LLC's Motion for Reconsideration of the Court's September 30, 2014, Order ("Motion") (dkt. no. 76). The Court has reviewed Defendant Atlantic Richfield Company's response (dkt. no. 79) and Plaintiff's reply (dkt. no. 80). For the reasons discussed below, the Motion is denied.

Also before the Court are Defendant's Motion to Dismiss or, in the Alternative, Motion to Strike ("Motion to Dismiss") (dkt. no. 87), and Plaintiff's Motion to Amend (dkt. no. 97). The Court has reviewed the relevant opposition and reply briefs (dkt. nos. 88, 91). The Motion to Dismiss is granted in part and denied in part. The Motion to Amend is granted, subject to the Court's ruling on the Motion to Dismiss.

**II.  BACKGROUND**

**A.  Factual Background**

A more thorough discussion of the background facts appears in the Court's September 30, 2014, Order ("September Order") (dkt. no. 67). To summarize,

Defendant's subsidiary owned and operated the Leviathan Mine Site ("the Site") in Alpine County, California, between 1951 and 1962. (Dkt. no. 1 ¶¶ 12-14.) Those mining activities produced acid mine drainage ("AMD"), which entered surface and ground water flowing from the Site. (*Id.* ¶¶ 15, 24-28.)

Plaintiff alleges that its property, which is downstream of the Site, has been contaminated by the Site's AMD discharges. (*Id.* ¶¶ 31-32.) Because of this contamination, Plaintiff claims that its land is unfit for ranching, residential, or any other purposes. (*Id.* ¶¶ 32-34.)

Cleanup efforts began at the Site in the early 1980s. (*See id.* ¶ 16.) In 2000, the Environmental Protection Agency ("EPA") added the Site to the National Priorities List for remedial action on contaminated sites under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9605. (Dkt. no. 1 ¶ 22.) In 2009, EPA and Defendant entered into an Administrative Settlement Agreement and Order on Consent for Removal Action in which Defendant agreed that it was a successor for purposes of liabilities under CERCLA, and that the Site and its AMD discharges fell within certain CERCLA definitions. (*Id.* ¶ 23.)

**B.    Procedural Background**

Plaintiff initiated this lawsuit in October 2013, alleging ten claims under state and federal law relating to past and ongoing pollutant discharges from the Site, and to the resulting contamination of Plaintiff's property. (*See id.* at 10-18.) Plaintiff seeks damages, injunctive and declaratory relief, and civil penalties. (*Id.* at 18-19.)

On September 30, 2014, the Court issued the September Order, which granted, in part, Defendant's first motion to dismiss. (Dkt. no. 67.) The Court held that it lacked subject matter jurisdiction over Claims 5, 6 and 7, which sought to enjoin pollutant discharges and levy civil penalties under the Clean Water Act ("CWA") and the Nevada

///

///

///

Water Pollution Control Act ("NWPCA").[1] (*Id.* at 7-10; *see* dkt. no. 1 at 13-16.) The Court ruled that CERCLA Section 113(h), 42 U.S.C. § 9613(h) — which strips federal courts of subject matter jurisdiction to review "any challenges to removal or remedial action" selected under the statute — foreclosed review of Plaintiff's claims for injunctive relief and for civil penalties under the CWA and the NWPCA. (Dkt. no. 67 at 7-10.) Those claims, the Court held, could interfere with ongoing cleanup efforts at the Site, and therefore constituted "challenges" that the Court lacked jurisdiction to review. (*Id.*)

### III. MOTION FOR RECONSIDERATION

Plaintiff asks the Court to reconsider the dismissal of Plaintiff's claims for civil penalties under the CWA and the NWPCA. (Dkt. no. 76 at 2-3.) Plaintiff insists that the Court erred in reasoning that Plaintiff's requested civil penalties would interfere with the ongoing CERCLA cleanup at the Site, and in dismissing those claims for lack of subject matter jurisdiction pursuant to CERCLA Section 113(h). (*Id.* at 4-6.) Plaintiff argues that the Court committed clear error by relying on an "incorrect assumption" about the amount of civil penalties that Defendant could owe for the discharges alleged in the Complaint. (*Id.* at 4.)

#### A. Legal Standard

Plaintiff seeks reconsideration under Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure. (Dkt. no. 76 at 4.) The September Order, however, addressed only four of Plaintiff's ten claims. (*See* dkt. no. 67.) Under Rule 54(b), which applies to orders that address fewer than all the claims in an action, district courts "possess[] the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient," as long as the court retains jurisdiction. *City of Los Angeles v.*

---

[1] The September Order also addressed Claim 8, which alleged that Defendant had wrongfully diverted Plaintiff's water into evaporation ponds at the Site. (Dkt. no. 1 at 16-17.) The September Order dismissed Claim 8 to the extent it sought to enjoin the diversion of water into the evaporation ponds. (Dkt. no. 67 at 7-9.) The Court deferred ruling on Plaintiff's claim for damages for wrongful diversion until the Court could hear oral argument on that issue. (*Id.* at 10.) During an October 15, 2014, hearing, the Court dismissed the outstanding wrongful diversion claim for damages. (*See* dkt. no. 92 at 24-26.) Upon Plaintiff's request, the Court gave Plaintiff leave to amend in order to assert a claim for wrongful appropriation of water due to contamination. (*Id.* at 26-27.)

*Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) (quoting *Melancon v. Texaco, Inc.*, 659 F.2d 551, 553 (5th Cir. 1981)) (emphasis omitted).

Nevertheless, a court should generally leave a previous decision undisturbed absent a showing of clear error or manifest injustice. *Abada v. Charles Schwab & Co., Inc.*, 127 F. Supp. 2d 1101, 1102 (S.D. Cal. 2000). A motion for reconsideration must set forth the following: (1) some valid reason why the court should revisit its prior order; and (2) facts or law of a "strongly convincing nature" in support of reversing the prior decision. *Frasure v. United States*, 256 F. Supp. 2d 1180, 1183 (D. Nev. 2003). A motion for reconsideration is thus properly denied when the movant fails to establish any reason justifying relief. *See Backlund v. Barnhart*, 778 F.2d 1386, 1388 (9th Cir. 1985) (holding that a district court properly denied a motion for reconsideration in which the plaintiff presented no arguments that were not already raised in his original motion).

**B.   Analysis**

Plaintiff raises three objections to the September Order. First, Plaintiff argues that the Court incorrectly assumed that Defendant would be liable for the maximum amount of civil penalties available under the CWA. (Dkt. no. 76 at 5.) Second, Plaintiff contends that the Court prematurely assumed that imposing civil penalties would interfere with the Site's ongoing CERCLA cleanup. (*Id.*) Finally, Plaintiff takes issue with certain authority cited in the September Order, contending that the authority was "clearly distinguishable." (*Id.* at 6.) Although the Court finds that these arguments fail to demonstrate clear error or manifest injustice, *see Abada*, 127 F. Supp. 2d at 1102, the Court will address each objection in turn.

**1.   Amount of Civil Penalties and Interference with the Cleanup**

Plaintiff argues that the Court clearly erred by calculating a hypothetical amount of civil penalties that Defendant could owe under the CWA. (Dkt. no. 76 at 5-6.) Plaintiff notes that the Court must impose civil penalties upon finding a violation of the CWA, but stresses that the Court would have discretion in fashioning those civil penalties. (*Id.* (citing *Leslie Salt Co. v. United States*, 55 F.3d 1388, 1396-97 (9th Cir. 1995); *Nat. Res.*

4

*Def. Council v. Sw. Marine Inc.*, 236 F.3d 985, 1001-02 (9th Cir. 2000)).) In light of this discretion, Plaintiff argues that the Court incorrectly assumed that a maximum possible penalty — which was calculated based on the penalties requested in the Complaint — could be applied to Defendant's alleged ongoing violations of the CWA and the NWPCA. (*Id.* at 5-6.)

Even accepting the Court's discretion to fashion these civil penalties, Plaintiff has not shown that subject matter jurisdiction exists in light of CERCLA Section 113(h).[2] *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003) (noting that a party opposing a factual attack on subject matter jurisdiction bears the burden of establishing such jurisdiction). As the Ninth Circuit has explained, Section 113(h) "is clear and unequivocal" and "amounts to a 'blunt withdrawal of federal jurisdiction.'" *McClellan Ecological Seepage Situation v. Perry* (*MESS*), 47 F.3d 325, 328 (9th Cir. 1995) (quoting *N. Shore Gas Co. v. E.P.A.*, 930 F.2d 1239, 1244 (7th Cir. 1991)). Section 113(h) bars review of actions that are "related to the goals of the cleanup." *ARCO Envtl. Remediation, L.L.C. v. Mont. Dep't of Health & Envtl. Quality*, 213 F.3d 1108, 1115 (9th Cir. 2000) (quoting *Razore v. Tulalip Tribes of Wash.*, 66 F.3d 236, 239 (9th Cir. 1995)). These actions would interfere with a CERCLA cleanup, *MESS*, 47 F.3d at 330-31, and have included instances where a plaintiff seeks "to dictate specific remedial actions; to postpone the cleanup; to impose additional reporting requirements on the cleanup; or to terminate [a Remedial Investigation/Feasibility Study] and alter the method and order of cleanup." *ARCO Envtl. Remediation*, 213 F.3d at 1115 (citations omitted).

///

---

[2]Section 113(h) states: "No federal court shall have jurisdiction under Federal law other than under section 1332 of Title 28 (relating to diversity of citizenship jurisdiction) or under State law which is applicable or relevant and appropriate under section 9621 of this title (relating to cleanup standards) to review any challenges to removal or remedial action selected under section 9604 of this title . . . ." 42 U.S.C. § 9613(h). Section 113(h) exempts certain actions from this jurisdictional bar, but those exceptions do not apply to Plaintiff's CWA and NWPCA claims. *See* 42 U.S.C. § 9613(h)(1)-(5).

But not "every action that increases the cost of a cleanup or diverts resources or personnel from it" necessarily constitutes a challenge to an ongoing CERCLA cleanup. *MESS*, 47 F.3d at 330. Rather, as the D.C. Circuit has explained, courts examine "the nexus between the nature of the suit and the CERCLA cleanup: the more closely related, the clearer it will be that the suit is a 'challenge.'" *El Paso Nat. Gas Co. v. United States*, 750 F.3d 863, 880 (D.C. Cir. 2014) (citing *MESS*, 47 F.3d at 330)). For example, a suit to enforce the minimum wage during a CERCLA cleanup would not constitute a "challenge" under Section 113(h) because it is not adequately related to the underlying cleanup. *MESS*, 47 F.3d at 330. Nor would a suit for civil penalties under the False Claims Act, where the suit alleges fraud associated with a CERCLA cleanup. *See Costner v. URS Consultants, Inc.*, 153 F.3d 667, 674-75 (8th Cir. 1998).

Plaintiff insists that the civil penalties it seeks under the CWA and the NWPCA lack an adequate nexus with the ongoing CERCLA cleanup, and, accordingly, do not constitute a challenge to the cleanup. (*See* dkt. no. 76 at 5-6.) Plaintiff sees its request for civil penalties as analogous to a fraud claim arising from a CERCLA cleanup — according to Plaintiff, civil penalties under the CWA and the NWPCA "simply pertain to a cleanup without actually affecting it." (Dkt. no. 76 at 7 (discussing *Costner*, 153 F.3d at 675).) At the same time, however, Plaintiff agrees that "the purpose of civil penalties is to compel compliance with statutory requirements." (Dkt. no. 80 at 6 (quoting dkt. no. 79 at 7) (alterations omitted).) The statutory requirements of the CWA and the NWPCA prohibit unpermitted discharges into certain waters; here, Plaintiff alleges that Defendant either lacked a permit to discharge AMD from the Site, or violated a permit (if Defendant had one) by discharging AMD. (Dkt. no. 1 at 13-16 (citing 33 U.S.C. §§ 1311(a), 1342; NRS § 445A.465); *see* dkt. no. 80 at 6.) Plaintiff also alleges that Defendant's violations are ongoing. (Dkt. no. 1 at 13-16; dkt. no. 80 at 5); *see Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found.*, 484 U.S. 49, 59 (1987) ("[T]he harm sought to be addressed by the citizen suit lies in the present or the future, not the past."). Taken together, Plaintiff's allegations indicate that its request for civil penalties is

designed, at least in part, to compel Defendant to stop discharging AMD, either with a permit or without.

The CERCLA cleanup at the Site involves the same ongoing AMD discharges that give rise to Plaintiff's request for civil penalties. (*See* dkt. no. 1 ¶¶ 18, 24-29, 74, 81, 88; dkt. no. 28-2 at 10, 17-18, 20-23, 28-29 (describing cleanup work related to AMD discharges and compliance with other federal, state, and local laws); dkt. no. 28-1 at 13 (same).) If the Court determines that these discharges violate the CWA, then civil penalties must be imposed for each day of the violation, notwithstanding the Court's discretion to determine an appropriate penalty amount. 33 U.S.C. § 1319(d); *Leslie Salt Co.*, 55 F.3d at 1396-97; *see* NRS § 445A.700(1) (a person who violates the NWPCA "shall pay a civil penalty . . . for each day of the violation"). Thus, absent some change to the ongoing cleanup — which involves AMD discharges that, according to Plaintiff, violate the CWA and the NWPCA — Defendant would be subject to civil penalties. The civil penalties are intertwined with the goals of the ongoing CERCLA cleanup, and this relationship constitutes a challenge to the cleanup that is barred by Section 113(h). *See MESS*, 47 F.3d at 330.

Plaintiff has failed to show that the Court erred in holding that Section 113(h) forecloses review of the civil penalties Plaintiff requests under the CWA and the NWPCA. The Court will not grant Plaintiff's Motion for Reconsideration on this basis.

### 2. Cited Authority

Plaintiff also argues that the Court erred in referencing *Pakootas v. Teck Cominco Metals, Ltd.*, 646 F.3d 1214 (9th Cir. 2011), in dismissing Claims 5, 6 and 7. (Dkt. no. 76 at 6-7; *see* dkt. no. 67 at 9-10).) In *Pakootas*, the Ninth Circuit held that the plaintiffs' claims for civil penalties under CERCLA were barred by Section 113(h). *Pakootas*, 646 F.3d at 1220-23. As Plaintiff emphasizes, the court reasoned that the CERCLA civil penalties were EPA's "hammer" to enforce compliance with a settlement agreement it had reached with the defendant. *Id.* at 1221. But as Plaintiff also notes, the court stated that "[a] suit for past penalties always has the potential to interfere with

7

ongoing cleanup efforts, because of its potential effect on the responsible party's financial ability to perform the cleanup." *Id.* at 1222; (*see* dkt. no. 76 at 7 n.1). In light of this potential effect, the court refused to assume that the defendant was financially able to pay "$24 million in potential penalties" — the maximum penalties available for the defendant's period of noncompliance — and continue the cleanup. *Pakootas*, 646 F.3d at 1222.

While Plaintiff is correct that *Pakootas* involved civil penalties sought in a different context, Plaintiff has not shown that this Court erred in citing the decision. Plaintiff's disagreement with the Court's reading of *Pakootas* is not an adequate basis to compel reconsideration of the September Order. The Court therefore denies Plaintiff's Motion for Reconsideration (dkt. no. 76).

## IV. MOTION TO DISMISS OR TO STRIKE

After the Court resolved Defendant's first motion to dismiss through the September Order and a subsequent hearing, Plaintiff filed an amended complaint. (Dkt. no. 81.) Plaintiff re-alleges its claims for civil penalties under the CWA and the NWPCA, and a claim for wrongful diversion of water that the Court previously dismissed. (*Id.* at 16-19.) Additionally, pursuant to the Court's grant of leave to amend (dkt. no 92 at 26-27), Plaintiff adds a claim that Defendant wrongfully appropriated Plaintiff's water by causing contaminants to enter the water. (Dkt. no. 81 at 19.) In addition to damages, Plaintiff seeks "replacement water" for the wrongfully appropriated water. (*Id.*)

Defendant moves to dismiss or to strike Plaintiff's re-alleged claims for civil penalties under the CWA and the NWPCA, Plaintiff's re-alleged claim for wrongful diversion, and Plaintiff's request for replacement water as a remedy to both the wrongful diversion and wrongful appropriation claims.[3] (Dkt. no. 87 at 9.)

---

[3]The Court notes that Plaintiff's practice of re-alleging previously dismissed claims makes this case more complex than it ought to be at this stage in the proceedings. As Plaintiff notes, there is no requirement to re-allege claims in order to preserve them for appeal. (Dkt. no. 88 at 4 (citing *Lacey v. Maricopa Cty.*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc)).) Rather, Plaintiff states that it reasserted these claims out of "an abundance of caution," given the pendency of Plaintiff's Motion for
*(…fn. cont.)*

Because the Court denies Plaintiff's Motion for Reconsideration, the Court dismisses Plaintiff's re-alleged claims for civil penalties under the CWA and the NWPCA. Furthermore, the Court previously dismissed Plaintiff's wrongful diversion claim — which was based on water distribution — in its entirety for lack of subject matter jurisdiction. (Dkt. no. 67 at 9; dkt. no. 92 at 25-26.) To the extent Plaintiff re-alleges a wrongful diversion claim based on water distribution, the re-alleged claim is dismissed. It is not clear to the Court, however, whether Plaintiff's request for replacement water attaches to its distribution-based claim. (*See* dkt. no. 88 at 5 (describing both the wrongful appropriation and wrongful diversion claims as "the Diversion claim").) If it does, then the Court will dismiss Plaintiff's request for replacement water under a distribution-based theory, consistent with the Court's prior rulings.

The Court will not, however, dismiss Plaintiff's claim for wrongful appropriation based on contamination and the associated remedies of damages and replacement water. Defendant contends that the replacement water remedy is an attempt to re-allege a previously dismissed claim for injunctive relief. (Dkt. no. 87 at 7; dkt. no. 91 at 3-5.) Defendant misconstrues the Court's September Order — while the Court found that CERCLA Section 113(h) foreclosed Plaintiff's request to enjoin the diversion of water into evaporation ponds, the Order did not address replacement water as a remedy for wrongful appropriation due to contamination. (*See* dkt. no. 67 at 7-9.) The Court also disagrees with Defendant's argument that Plaintiff's request for replacement water to compensate for wrongful appropriation constitutes a challenge to the CERCLA cleanup.

///

---

*(fn. cont…)*
Reconsideration. (*Id.*) Such caution is unnecessary. The Court's September Order controls the proceedings unless the Court grants reconsideration. Plaintiff's practice of re-alleging dismissed claims while the Motion for Reconsideration was pending has required the Court to "pars[e] old claims and reiterat[e] its prior rulings[;]" *Lacey*, 693 F.3d at 928, thereby generating needless work for the Court and the opposing party and leading to further delays.

(*See* dkt. no. 91 at 3-5.) Defendant has not shown that this remedy is directly related to, or interferes with, the goals of the CERCLA cleanup. *See MESS*, 47 F.3d at 330.

Accordingly, Defendant's Motion to Dismiss (dkt. no. 87) is granted in part and denied in part. The Court dismisses Plaintiff's re-alleged claims for civil penalties under the CWA and the NWPCA, and Plaintiff's re-alleged claim for wrongful diversion under a water distribution theory. To the extent Plaintiff seeks replacement water under a distribution theory, the Court dismisses that claim. The Court will not dismiss Plaintiff's claim for wrongful appropriation due to water contamination.

## V.     MOTION TO AMEND

Plaintiff seeks leave to file a Second Amended Complaint ("SAC"). (Dkt. no. 97.) Defendant does not oppose the Motion to Amend, except to the extent that Plaintiff reasserts claims that the Court previously dismissed. (Dkt. no. 109 at 2 & n.1.) After considering the parties' notices to the Court regarding the Motion to Amend (dkt. nos. 109, 110), the Court will grant the Motion to Amend, subject to the ruling on Defendant's Motion to Dismiss (dkt. no. 87).

## VI.    CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion because they do not affect the outcome of these Motions.

It is therefore ordered that Plaintiff's Motion for Reconsideration (dkt. no. 76) is denied.

It is further ordered that Defendant's Motion to Dismiss or to Strike (dkt. no. 87) is granted in part and denied in part. Plaintiff may proceed with its wrongful appropriation claim based on a contamination theory. The Court dismisses Plaintiff's re-alleged claims under the CWA, the NWPCA, and for wrongful diversion based on a water distribution theory. To the extent Plaintiff requests replacement water under a distribution-based theory, the Court dismisses that claim for relief.

It is further ordered that Plaintiff's Motion for Leave to Amend (dkt. no. 97) is granted, subject to the Court's ruling on Defendant's Motion to Dismiss or to Strike (dkt. no. 87).

DATED THIS 13th day of August 2015.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE