UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| DIAMOND X RANCH LLC,<br><br>    Plaintiff/Counter-Defendant,<br>v.<br>ATLANTIC RICHFIELD COMPANY,<br>    Defendant/Counterclaimant/<br>    Third-Party Plaintiff,<br>v.<br>PARK LIVESTOCK CO.,<br>    Third-Party Defendant. | Case No. 3:13-cv-00570-MMD-WGC<br><br>ORDER |

**I.   SUMMARY**

Pending before the Court is Plaintiff and Counter-Defendant Diamond X Ranch, LLC's ("Diamond X") Objection to the March 13, 2018 Order of Magistrate Judge William G. Cobb ("Objection") (ECF No. 338). Defendant, Counter-claimant and Third-Party Plaintiff Atlantic Richfield Company ("ARCO") filed a response (ECF No. 342).

For the reasons discussed herein, the Objection is overruled.

**II.   RELEVANT BACKGROUND**

This action concerns alleged contamination of a ranch ("the River Ranch") owned and operated by Diamond X through the release of acid mine drainage ("AMD") from the ARCO-owned Leviathan Mine. On January 25, 2018, Judge Cobb issued an oral ruling ("Expert Report Order") in which Judge Cobb excluded the entire supplemental expert report of Robert Anderson, reasoning that "the aspect [in the supplemental report] of the flood plain remedial plan regarding the earthen channel is too far beyond Mr. Anderson's initial report" and thus is not "tied or tethered to the preexisting conclusions" in Anderson's

initial report. (ECF No. 329 at 1-2.) Judge Cobb also excluded those portions of the supplemental expert report of Jeffrey Dagdigian, Ph.D., "for which he embraces Anderson's earthen channel" and ordered that ARCO be allowed to take the deposition of Dr. Dagdigian. (*Id.*; ECF No. 336 at 3.)

Before Dr. Dagdigian's scheduled deposition on February 14, 2018, Diamond X's counsel provided ARCO's counsel with "well over one hundred pages of new tables, figures and other documents not previously disclosed." (ECF No. 336 at 3 (quoting ECF No. 333 at 4).) During the intervening weeks between the Expert Report Order and the scheduled deposition, Dr. Dagdigian retained a new expert, Innovative Construction Solutions ("ICS"), and had an employee at his firm type up her notes on the costs of an embankment. All of this was to "prepare a new floodplain mitigation channel design and cost estimate" in lieu of that prepared by Anderson and to then "change[] his excluded opinion and cost estimates for the floodplain remedy" to embrace the replacement costs identified by ICS. (ECF No. 336 at 4 (quoting ECF No. 333 at 2-3); *see also* ECF No. 338 at 10.) Dr. Dagdigian also prepared a corrected and updated table, Table 3-6A, which provided an estimate of future costs for removing arsenic-contaminated soil from the relevant parcels (a solution identified as "Option 2"). (ECF No. 336 at 10; ECF No. 338 at 11.) ARCO then filed a Motion to Enforce the Expert Report Order's evidentiary exclusions. (ECF No. 333.)

Judge Cobb found that the Motion to Enforce was not a disguised motion in limine as Diamond X had argued; instead, relying on Fed. R. Civ. P. 37, Judge Cobb found that it was within the Court's authority to address the Motion to Enforce and issue sanctions. (ECF No. 336 at 8.) In the written order ("Enforcement Order"), Judge Cobb generally held that Diamond X was prohibited "from offering testimony or evidence (i) on the costs for constructing a floodplain mitigation channel or (ii) that replaces, substitutes for, or serves as an alternative to the earthen channel developed by Mr. Anderson and embraced by Dr. Dagdigian in his November 15, 2017 supplemental report." (*Id.* at 11.) More specifically, Judge Cobb excluded (1) any "utilization of the ICS opinions and

conclusions either directly or indirectly via Dagdigian's reports" because those opinions were not contained in the original or supplemental reports of Dr. Dagdigian, and (2) the cost estimates and opinions as to the removal of arsenic hot spots found in Table 3-6A because this information was not timely provided as is required by Fed. R. Civ. P. 26. (*Id.* at 10-11.) Judge Cobb then issued sanctions—specifically, he granted ARCO's request for reasonable attorney fees incurred in bringing the Motion to Enforce. (*Id.* at 12.)

Diamond X now objects to the Enforcement Order.

### III. LEGAL STANDARD

Magistrate judges are authorized to resolve pretrial matters subject to district court review under a "clearly erroneous or contrary to law" standard. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a) (a "district judge . . . must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law"); *see also* LR IB 3-1(a) ("A district judge may reconsider any pretrial matter referred to a magistrate judge in a civil or criminal case under LB IB 1-3, when it has been shown the magistrate judge's order is clearly erroneous or contrary to law."). A magistrate judge's order is "clearly erroneous" if the court has a "definite and firm conviction that a mistake has been committed." *See United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948). "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Jadwin v. Cty. of Kern*, 767 F. Supp. 2d 1069, 1110-11 (E.D. Cal. 2011) (quoting *DeFazio v. Wallis*, 459 F. Supp. 2d 159, 163 (E.D.N.Y. 2006)). When reviewing the order, however, the magistrate judge "is afforded broad discretion, which will be overruled only if abused." *Columbia Pictures, Inc. v. Bunnell*, 245 F.R.D. 443, 446 (C.D. Cal. 2007). The district judge "may not simply substitute its judgment" for that of the magistrate judge. *Grimes v. City & Cty. of San Francisco*, 951 F.2d 236, 241 (9th Cir. 1991) (citing *United States v. BNS, Inc.*, 858 F.2d 456, 464 (9th Cir. 1988)).

### IV. DISCUSSION

Diamond X argues that the Enforcement Order is clearly erroneous for a variety of reasons, including that Dr. Dagdigian's supplementation after the Expert Report Order is

3

consistent with that Order and that the Enforcement Order unfairly expands the Expert Report Order. (ECF No. 338 at 13-23.) However, these arguments miss the point. As ARCO points out, November 15, 2017—not February 2018—was the last date on which experts could supplement their opinions (ECF No. 342 at 8 (citing ECF No. 306)), and Judge Cobb clearly stated at the January 25, 2018 hearing that supplementation of expert opinions was permitted insofar as supplementation was tied or tethered to conclusions in the original expert reports. Dr. Dagdigian's incorporation of ICS's findings and addition of Table 3-6A effectively supplemented his expert report in ways untethered to his original report and well past the November 15, 2017 deadline. The Court therefore cannot find that Judge Cobb committed clear error when he excluded this supplemental information and awarded reasonable attorney fees to ARCO.

**A. The Scope of the Expert Report Order**

As a preliminary matter, Diamond X argues that this Court's prior ruling in *Shakespear v. Wal-Mart Stores, Inc.*, No. 2:12-cv-01064-MMD-PAL, 2014 WL 5106048 (D. Nev. Oct. 10, 2014), which Judge Cobb relied on to impose the sanctions in the Enforcement Order, is inapplicable and does not actually support the Enforcement Order. (ECF No. 338 at 14.) The Court disagrees.

While Diamond X is correct that *Shakespear* is dissimilar from the Expert Report Order insofar as in *Shakespear* the Court excluded the expert witness testimonies altogether and here only portions of Dr. Dagdigian's supplemental report were excluded, the underlying premise is the same. There, the magistrate judge had prohibited the plaintiff from using "as evidence at trial, at any hearing, or any motion, the testimony or opinions" of two expert witnesses. *Shakespear*, 2014 WL 5106048, at *1. The district judge then overruled the plaintiff's objection to the magistrate judge's order, finding that the plaintiff had "unreasonably waited until the expert disclosure deadline to disclose two expert witnesses . . . and their reports." *Id.* In the relevant decision in *Shakespear*, the court found that the plaintiff had violated the two prior orders by stating her intent to call the same two expert witnesses at trial and by citing to the expert's opinions in her motions

in limine. *Id.* The court further found the plaintiff's reading of the scope of the magistrate judge's order—that the two expert witnesses were precluded only from offering their opinions as to the plaintiff's future medical needs, costs, and any other permanent impairment—to be unreasonable in light of the court's previous orders, which had clarified the meaning of the original magistrate judge's order. *See id.* at *2.

Similarly, here, the Enforcement Order clarified the scope of the Expert Report Order and resolved any seeming ambiguity regarding the exclusion of information or opinions concerning the earthen channel. In the Enforcement Order, Judge Cobb clarified the scope of the Expert Report Order's exclusion of portions of Dr. Dagdigian's supplemental report, stating that because "ICS' opinions and report were not contained within the original or supplemental reports of Dr. Dagdigian, *to be consistent with its prior ruling* the court will not allow utilization of the ICS opinions and conclusions either directly or indirectly via Dagidigan's reports." (ECF No. 336 at 10 (emphasis added).) In other words, Judge Cobb clarified that nothing in the Expert Report Order permitted Dr. Dagdigian to substitute Anderson's findings with opinions that were untethered to Dr. Dagdigian's original report in advance of ARCO's February 14, 2018 deposition of him. Diamond X contends that by excising "from his own supplemental report any embrace of the design and cost estimate discussed in the Anderson Supplemental Report" and replacing it with "different design and cost information from other, non-Anderson sources," Dr. Dagdigian (and therefore Diamond X) did not violate the Expert Report Order. (ECF No. 338 at 13.) Judge Cobb however made clear that Diamond X did violate the Order because it supplemented Dr. Dagdigian's reports with information untethered to Dr. Dagdigian's prior reports after the deadline to supplement and after Judge Cobb ruled on the scope of permissible supplementation. (*See* ECF No. 336 at 10.) Similarly, as for Table 3-6A, Judge Cobb made clear that while the general subject of Option 2 may have been found in Dr. Dagdigian's original or even supplemental report, the cost estimates in Table 3-6A were not available in either report and were created after the Expert Report Order. This is ultimately true of both the ICS data and the information found in Table 3-

5

6A, making clear that Magistrate Judge Cobb's Expert Report Order excluded any items untethered to the original expert reports and which were developed after the November 15, 2017 expert disclosure deadline.

### B. The Magistrate Judge did not Unfairly Expand the Expert Report Order

Diamond X argues that the Enforcement Order unfairly expanded the scope of the Expert Report Order by excluding testimony or evidence about the "costs or needs" of a floodplain mitigation channel when the Expert Report Order only excluded Anderson's specific design and cost projections about the earthen embankment. (ECF No. 338 at 15, 22.) The Court finds Diamond X's arguments as to this issue unavailing.

Diamond X's argues that the earthen embankment and channel alternative was Dr. Dagdigian's, as opposed to Anderson's, idea, and thus something Dr. Dagdigian could seek alternative supplementation for—either from ICS or from another employee at his firm. (*See* ECF No. 338 at 15-20.) However, this is irrelevant. Judge Cobb found that this information, which was added to the expert file after the Expert Report Order was issued, constituted opinions aimed to replace the exclusion of the earthen channel remedial option. This makes clear that the scope of the Expert Report Order was the earthen channel remedial option itself, not Anderson's version of it. This is consistent with the language used by Judge Cobb at the January 25, 2018 hearing and lends to a reasonable interpretation that he was excluding the earthen channel option itself. (*See* ECF No. 330 at 94 ("As to Dagdigian . . . I am going to grant [the motion to exclude expert reports] only to the extent that Dagdigian, it appears, in [his supplemental report] pages 33 through 37 . . . embraces the [ ] earthen channel. . . But I am going to allow everything else in his initial or in his supplemental report that he has presented. And [allow] [his supplemental report's] sections 3.0, 4.0, 6.2, 6.3 except to the extent that I've eliminated his testimony relative to the earthen channel . . .").)

Similarly, the Court finds unpersuasive Diamond X's arguments that the ICS Bid and internal notes from an employee at Dr. Dagdigian's firm are permissible "evidentiary details" and not wholly new opinions. (*See* ECF No. 338 at 18-19.) Regardless of whether

this information from ICS and Dr. Dagidigian's fellow employee about the earthen channel were merely "evidentiary details," Judge Cobb clearly found this mitigation alternative to be untethered to Dr. Dagdigian's *original* report when he excluded it for a second time in the Enforcement Order, which is the relevant inquiry based on his interpretation at the January 25, 2018 hearing of the parties' stipulation regarding expert discovery (*see* ECF No. 330 at 4, 15-16). Similarly, Diamond X's arguments concerning Table 3-6A focus on how the costs are evidentiary details tied back to Dr. Dagidigan's supplemental report and how this information does not pertain to the earthen channel alternative. (ECF No. 338 at 20.)[1] However, the time to incorporate those costs was the November 15, 2017 deadline; ultimately, what matters is that these additions were untimely, which Judge Cobb highlighted in the Enforcement Order.

Judge Cobb is in the best position to construe his own Expert Report Order. Moreover, the Enforcement Order did not unfairly expand the Expert Report Order.[2] Accordingly, the Court finds Diamond X has not demonstrated that Judge Cobb committed clear error.[3]

---

[1] Diamond X's Objection appears to posit the existence of a Table 3-6 in Dr. Dagdigian's Supplemental Report. (*See* ECF No. 338 at 20-21; ECF No. 338-1 at ¶¶ 4-5; ECF No. 338-3.) However, Diamond X does not point to the ECF number and pincite for the portion of the supplemental report where this table may be found. Instead, Diamond X cites to a page in the supplemental report that summarizes Option 2 but does not include a table of costs. (ECF No. 338 at 20 (citing ECF No. 334-7 at 45).) Moreover, it does not appear that the supplemental report contains a Table 3-6 (only a Table 3-5, which is not the table attached as Exhibit B to Diamond X's objection).

[2] Diamond X argues that Judge Cobb committed clear error in the Enforcement Order because "Diamond X has not proffered any testimony or other evidence regarding the documents that Dr. Dagdigian added to his expert file" and because "the proper mechanism for addressing anticipated evidentiary issues . . . is a motion in limine." (ECF No. 338 at 6 n.1.). While the issue could have been raised via a motion in limine, that is not the only available remedy. Judge Cobb did not commit clear error in considering the Motion to Enforce.

[3] Diamond X also argues that the Enforcement Order should be reversed "because it is undeniable that ARCO had a full and fair opportunity to cross-examine Dr. Dagdigian about the supplemental materials at the February 14, 2018 deposition." (ECF No. 338 at 20.) This is a red herring—in an objection, the district judge looks solely at whether the

## V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of Diamond X's Objection.

It is therefore ordered that Diamond X's Objection (ECF No. 338) is overruled.

DATED THIS 3rd day of May 2018.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE

---

magistrate judge committed clear error as a matter of law and not whether the magistrate judge acted pursuant to considerations of equity.